UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ANTHONY GANT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 1:16-CV-380-TLS |
| | ) |
| CITY OF FORT WAYNE, | ) |
| OFFICER DANIEL HARTMAN, | ) |
| OFFICER JASON PALM, and | ) |
| OFFICER BRADLEY GRIFFIN, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter comes before the Court on a Motion for Summary Judgment [ECF No. 37] filed by Defendants Officer Daniel Hartman, Officer Jason Palm, Officer Bradley Griffin, and the City of Fort Wayne ("the Defendants"). The Plaintiff, Anthony Gant, filed his First Amended Complaint against the Defendants on March 13, 2017 [ECF No. 27], brought pursuant to 42 U.S.C. § 1983, alleging (1) the unconstitutional use of excessive force in violation of the Fourth Amendment against Defendant Hartman, (2) failure to intervene against Defendants Griffin and Palm, (3) failure to adequately train against the City of Fort Wayne, and (4) the unreasonable denial of emergency medical care in violation of the Fourth and/or Fourteenth Amendments against Defendant Griffin. In his prayer for relief, the Plaintiff included a request for punitive damages. On October 25, 2017, the Defendants filed a Motion for Summary Judgment [ECF No. 37] on all counts and assert a claim of qualified immunity as to Defendants Hartman, Griffin, and Palm. The Defendants also argue that the Plaintiff's request for punitive damages must fail as a matter of law. The Plaintiff responded on November 11, 2017 [ECF No. 41], and the Defendants

replied on November 22, 2017 [ECF No. 42]. This matter is now fully briefed and ripe for review.

**FACTUAL BACKGROUND**

On August 23, 2015, Defendants Hartman and Griffin responded to a call regarding an armed robbery at a Dollar General store. Other police officers soon arrived at the scene, including Defendant Palm. Previously, there had been multiple armed robberies at various Dollar General stores in the City of Fort Wayne, which were carried out in similar fashion. Typically, two men would enter the store, display hand guns, confine/zip tie employees, wait for registers to open, and depart, taking cash, cigarettes, and employees' cell phones.

As Defendant Hartman approached the front door of the Dollar General on August 23, 2015, the first suspect, later identified as Christopher Johnson, ran out the front entrance. After determining that the person was a suspect and not a victim, Defendant Hartman commanded Johnson to stop and get on the ground, but Johnson ignored him and kept running. Soon after, the second suspect, later identified as Anthony Gant, exited the store through the front entrance. Defendant Hartman also commanded Gant to stop and get down on the ground. Defendant Hartman stated that he was fearful for his life because there was no cover available to him and believed that Gant was holding a handgun. Defendant Hartman discharged two rounds from his firearm, one of which struck Gant in the abdomen. It was later determined that Gant was not holding a handgun.

Defendants Griffin and Palm testified that, while observing Johnson running across the parking lot despite being commanded to stop and while concerned for their safety and the safety of others, they heard shots fired. Defendant Palm began to pursue Johnson. Defendant Griffin

took the canine that was with him to the front door of the store and observed the Plaintiff in a seated position inside the vestibule. Defendant Griffin ordered the Plaintiff to get on the ground at which point the Plaintiff informed Defendant Griffin that he had been shot. Defendant Griffin called for an ambulance, handcuffed the Plaintiff, and told him to lie down.

An ambulance arrived about two minutes later. However, Defendant Griffin did not allow ambulance personnel to approach the Plaintiff until the scene had been cleared, which occurred about four minutes later. A total of six minutes elapsed between the time at which Defendant Griffin called the ambulance and the time at which emergency medical personnel were able to administer aide.

Defendant Hartman stated that when he shot the Plaintiff, he believed that the Plaintiff had a handgun in his left hand, and when the Plaintiff turned towards Defendant Hartman and began moving his hand toward the center of his body, Defendant Hartman feared for his life. Neither Defendant Griffin nor Palm saw anything in the Plaintiff's hands that appeared to be a handgun. Defendant Hartman states that the Plaintiff showed no signs of following the command to get on the ground, but the Plaintiff argues that he was given no chance to obey because he was shot almost immediately after exiting the store.

The incident was captured by Defendants Hartman and Griffin's in-car cameras.

**STANDARD OF REVIEW**

Summary judgment is proper where the evidence of record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the record it

believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to "go beyond the pleadings" to cite evidence of a genuine factual dispute that precludes summary judgment. *Id.* at 324. "[A] court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in its favor on a material issue, then the Court must enter summary judgment against it. *Id.*

## ANALYSIS

**A.     Excessive Force**

Claims of excessive force in the course of an arrest, investigatory stop, or other "seizure" are to be analyzed under the reasonableness standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). "[T]here can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). "The reasonableness inquiry is an objective one. The question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397.

*1.     Whether Defendant Hartman's Use of Deadly Force was Excessive*

To determine whether the amount of force used was excessive, the Court "looks to whether the force used to seize the suspect was excessive in relation to the danger he posed—to the community or to the arresting officers if left unattended." *Jacobs v. City of Chi.*, 215 F.3d

758, 773 (7th Cir. 2000). All decisions about the reasonableness of the use of deadly force "must embody allowance for the fact that police officers are often forced to make split second judgments—in circumstances that are tense, uncertain and rapidly evolving." *Plakas v. Drinski*, 19 F.3d 1143 (7th Cir. 1994) (citing *Graham*, 490 U.S. at 396–97). Courts must examine the reasonableness of the actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

"When an officer believes that a suspect's actions place[] him, his partner, or those in the immediate vicinity in imminent danger of death or serious bodily injury, the officer can reasonably exercise the use of deadly force." *Sherrod v. Berry*, 856 F.2d 802, 805 (7th Cir. 1988). The officer does not necessarily need to be certain that the suspect was armed before using deadly force. *See Garner*, 471 U.S. at 11–12. However, an officer's subjective beliefs regarding the reasonableness of the force applied is not relevant to the inquiry. *Common v. City of Chi.*, 661 F.3d 940, 943 (7th Cir. 2011). "[A] person has a right not to be seized through the use of deadly force unless he puts another person (including a police officer) in imminent danger or he is actively resisting arrest and the circumstances warrant that degree of force." *Weinmann v. McClone*, 787 F.3d 444, 448 (7th Cir. 2014).

Here, at the time the Plaintiff was shot, he did not in fact have a gun in his hands. A jury must assess whether it was reasonable for an officer in Defendant Hartman's position to believe that the Plaintiff had a gun. Viewing the facts most favorably to the Plaintiff, a reasonable juror could conclude either that the Plaintiff was in the process of obeying Defendant Hartman's commands or that he did not have the opportunity to obey Defendant Hartman's commands. Therefore, there are genuine issues of material fact as to whether Defendant Harman's use of deadly force was excessive.

*2. Whether Defendant Hartman is Entitled to Qualified Immunity*

Regardless of whether his use of deadly force was reasonable, Defendant Hartman argues that he is entitled to qualified immunity. "The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Marshall v. Allen*, 984 F.2d 787, 791 (7th Cir. 1993) (internal quotation omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The matter of qualified immunity is for the court, not the jury, to decide. *Jones v. City of Chi.*, 856 F.2d 985 (7th Cir. 1988); *Rackovich v. Wade*, 850 F.2d 1180 (7th Cir. 1988).

Issues on summary judgment regarding qualified immunity require a two-pronged inquiry. "The first asks whether the facts, taken in the light most favorable to the party asserting the injury show the officer's conduct violated a federal right." *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014) (internal quotations and alteration omitted). The second asks "whether the right in question was 'clearly established' at the time of the violation." *Id.* at 1866. Courts may decide these two prongs in any order, "[b]ut under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Id.* The Court has already determined that there are genuine issues of material fact regarding the first prong.

Under the second prong, "the salient question is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Id.* (internal quotations and alteration omitted). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). It is a "long standing

6

principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017). Thus, "[t]he general principle that deadly force requires a sufficient threat hardly settles [the] matter," as it is the particular conduct based on the circumstances of the case that must have been clearly established as constitutionally impermissible. *Mullenix*, 136 S. Ct. at 309. Knowledge of basic constitutional rights "imposes neither an unfair burden upon a person assuming a responsible public office requiring a high degree of intelligence and judgment for the proper fulfillment of its duties, nor an unwarranted burden in light of the value which civil rights have in our legal system." *Wood v. Strickland*, 420 U.S. 308, 322 (1975).

"The Seventh Circuit has recognized . . . that the excessive force standard is well settled and, since it is already an objective standard based on a reasonable police officer, qualified immunity normally will not apply." *Johnson v. City of Milwaukee*, 41 F. Supp. 2d 917, 930 (E.D. Wis. 1999) (citing *Lanigan v. Village of E. Hazel Crest, Ill.*, 110 F.3d 467, 467–67 (7th Cir. 1997)). "Establishing that the use of force in a particular case was 'so plainly excessive' requires a fair amount of factual development." *Chelios v. Heavener*, 520 F.3d 678, 692 (7th Cir. 2008). And, "[i]f a jury finds that any of the Defendants [sic] officers are liable for excessive force, then by definition they would not be entitled to qualified immunity." *Sheehan v. Noble Cty. Sheriff's Dept.*, No. 1:14-CV-324, 2016 WL 7100555, at *13 (N.D. Ind. Dec. 6, 2016). Thus, "if the facts draw into question the objective reasonableness of the police action under the alleged circumstances, they must be developed in the district court before a definitive ruling on the defense can be made." *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996). *Ellis v. Wynalda*, 999 F.2d 243, 246 (7th Cir. 1993) (citing *Graham*, 490 U.S. at 396 and *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)) (reversing grant of summary judgment as to qualified immunity where

reasonable jury could find force excessive). That is, where there is a question of fact regarding whether the use of deadly force is justified, a defendant is not entitled to summary judgment on the issue of qualified immunity. Where there are factual disputes regarding the relationship between the force used and the threatened harm, "a trial [is] required before determining whether the officer should have known in the circumstances presented that the [force] was plainly excessive." *Chelios*, 520 F.3d at 692 (internal quotations omitted).

In *White v. Gerardot*, the Seventh Circuit found that questions of fact precluded a finding of qualified immunity under similar circumstances. In *White*, the defendant claimed he was in fear for his life because he believed that the suspect had a gun and that, despite his commands for the suspect to raise his hands, the suspect "was moving his hands in front of him as if he were reloading his gun." 509 F.3d 829, 834 (7th Cir. 2007). However, the plaintiff's characterization of the event conflicted with the defendant's. The plaintiff produced evidence tending to show that the suspect was not, in fact, disobeying the defendant's commands and that the suspect did not, in fact, have a gun in his hands when the defendant shot him. *Id.* at 835. Thus, the Seventh Circuit found it had no jurisdiction to review the district court's denial of summary judgment on qualified immunity because of these issues of disputed material fact. *Id.* In the instant case, it was determined that, at the time Defendant Hartman shot the Plaintiff, the Plaintiff did not in fact have a gun in his hands, and a reasonable juror could conclude that he was in the process of obeying Defendant Hartman's commands. Therefore, the Court cannot grant summary judgment as to qualified immunity regarding the Plaintiff's claim for excessive force against Defendant Hartman.

## B.     Denial of Medical Care

Defendant Griffin also argues that he is entitled to qualified immunity on the claim that he unreasonably denied medical care to the Plaintiff because there is no clearly established law that his actions, under the circumstances, violated the Plaintiff's rights. It is "well settled that providing no medical care in the face of a serious health risk constitutes deliberate indifference," which exceeds the reasonableness standard of the Fourth Amendment. *Ortiz v. City of Chi.*, 656 F.3d 523, 538 (7th Cir. 2011) (finding that if the defendants were award of the serious medical condition but failed to take steps to address the condition, the issue of qualified immunity survived summary judgment).

However, the Plaintiff has not pointed to, and the Court has not found, case law clearly establishing that briefly delaying medical care by emergency personnel while securing a crime scene violates a person's Fourth Amendment rights. The Plaintiff cites to *Ross v. United States* for the proposition that preventing others from reaching the Plaintiff in order to rescue him is unconstitutional. But *Ross* is distinguishable. In *Ross*, the deputy halted an imminent rescue of a boy who had fallen into a lake, going so far as to threaten the would-be rescuers with arrest if they attempted a rescue, because of a policy that permitted only divers from the city fire department to attempt such rescues. 910 F.2d 1422, 1424–25. It took twenty minutes for the city fire department's divers to reach the scene and another ten minutes for the divers to retrieve the boy's body. *Id.* at 25. Although the Seventh Circuit in *Ross* determined that it was "clearly established on [the relevant date] that a citizen in peril for his life had a constitutional right that prevented a police officer from cutting off private avenues of lifesaving rescue without providing an alternative," the situation in the instant case is not so clear. Here, Defendant Griffin did not delay rescue by a private actor in favor of a public actor not immediately able to provide

9

emergency care. In fact, upon determining that the Plaintiff was injured, Defendant Griffin called an ambulance. Defendant Griffin was faced with a crime scene, and it had not yet been determined whether there were remaining, armed suspects that presented a threat to all parties involved. Thus, even if the jury were to find that Defendant Griffin's actions were objectively unreasonable, the Court cannot say that the Plaintiff's constitutional rights under the circumstances were so "clearly established" that a reasonable police officer would have known that such actions would violate the Plaintiff's constitutional rights. Therefore, the Court will grant summary judgment of qualified immunity as to the Plaintiff's claim for denial of medical care against Defendant Griffin.

### C. Failure to Intervene

The Plaintiff accuses both Defendants Griffin and Palm of failing to intervene in Defendant Hartman's unconstitutional use of excessive force. A police officer may be liable for a claim brought pursuant to 42 U.S.C. § 1983 where he fails to intervene to prevent an unconstitutional wrong, including excessive force, given a reasonable opportunity to do so. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Officers "who have a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's rights through the use of excessive force but fail to do so," therefore, can be held liable. *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2005). The Seventh Circuit "has implied that a 'realistic opportunity to intervene' may exist whenever an officer could have called for a backup, called for help, or at least cautioned the excessive force defendant to stop." *Id.* (internal quotation marks and brackets omitted). "Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all

the evidence, a reasonable jury could not possibly conclude otherwise." *Lanigan v. Village of E. Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997).

The Court has already determined that there is a question of fact as to whether a constitutional violation occurred when Defendant Hartman shot the Plaintiff. There is no question that Defendants Griffin and Palm were present when the incident occurred. Thus, the only remaining question is whether Defendants Griffin and Palm had a realistic opportunity to intervene. "In deciding whether an officer had a realistic opportunity to intervene, courts may consider, among other factors, the length of the excessive force, the number of blows involved, and the positions of the bystander officers relative to the altercation." *Howard v. Ealing*, 876 F. Supp. 2d 1056, 1072 (N.D. Ind. 2012) (citations omitted). Thus, where the "excessive force consists of only one or two blows in quick succession" or where the incident "took only seconds," an officer may not have had a realistic opportunity to intervene. *See id.* at 1072–73.

The Plaintiff contends that Defendants Griffin and Palm knew that he was unarmed and failed to apprise Defendant Hartman of that fact, which would have prevented Defendant Hartman from shooting the Plaintiff. The Plaintiff argues that Defendants Griffin and Palm conceded that they did not see the Plaintiff with a firearm but did not attempt to stop Defendant Hartman from firing on the Plaintiff. Moreover, the Plaintiff points out that the three officers had their guns drawn, waiting for the suspects to exit the store and argues that a "reasonable officer would have been aware that the use of deadly force was possible and he should take all steps to prevent this force where not warranted." (Pl. Resp. Br. 15.)

The Court concludes that no reasonable juror could find that Defendants Griffin and Palm had a realistic opportunity to intervene to prevent Defendant Hartman from firing at the Plaintiff. Both Defendants were tracking the fleeing suspect rather than focusing on the Plaintiff. *See*

11

*Thomas v. City of Fort Wayne*, No. 1:06-CV-320, 2008 WL 282348, at *8 (N.D. Ind. Jan. 31, 2008) (finding no failure to intervene when officers' attention was on restraining the plaintiff rather than on the officer accused of using excessive force); *Gutierrez v. City of Indianapolis*, 886 F. Supp. 2d 984, 998 (S.D. Ind. 2012) (same). Thus, it is of no surprise that neither officer saw the Plaintiff with a firearm or warned Defendant Hartman that the Plaintiff was unarmed.

Moreover, "[t]here is no evidence to suggest anything but that this was a sudden and unexpected quick incident with no signs of what was going to happen until it actually occurred." *Flores v. City of E. Chi.*, No. 2:15-CV-22, 2017 WL 25414, at *5 (N.D. Ind. Jan. 3, 2017). Just over two seconds passed from the time the first suspect began opening the front door of the store—not from the time the Plaintiff was fully visible to the Defendants—until Defendant Hartman fired on the Plaintiff. Even had Defendants Griffin and Palm had their eyes trained on the Plaintiff rather than the fleeing suspect, there was no realistic opportunity for them to intervene. *See Xie v. City of Chi.*, No.14-CV-6082, 2016 WL 6193981, at *4 (N.D. Ill. Oct. 24, 2016) (finding that it would be "patently unreasonable" to find that the defendants had a realistic opportunity to intervene when they had "only a few seconds to appreciate what was happening, let alone prevent the other officers from" acting); *Gilbert v. French*, No. H-06-3986, 2008 WL 394222, at *8 (S.D. Tex. Feb. 12, 2008) (finding as a matter of law that where "mere seconds elapsed from the time [the plaintiff] exited the restaurant until the time he was shot[,]" there was "an insufficient amount of time for officers to appreciate and react to a possible use of excessive force, especially in light of the dangerous and quickly evolving situation"); *Rohrbough v. Hall*, No. 4:07CV996, 2008 WL 4722742, at *5 (E.D. Mo. Oct. 23, 2008) (finding that "[w]here an attack only lasts a few seconds, non-participating bystander officers do not have a 'realistic opportunity to prevent the attack'") (citing *Gaudreault v. Municipality of Salem*, 923 F.2d 303,

(1st Cir. 1990)). Therefore, the Court will grant summary judgment as to the Plaintiff's claim for failure to intervene against Defendants Griffin and Palm.

D.  **Failure to Train**

The City of Fort Wayne argues that the Plaintiff's claim for failure to appropriately train Defendants Hartman, Griffin, and Palm must fail as a matter of law. To establish liability on this theory, the Plaintiff must prove that (1) the Plaintiff suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority for the City; which (3) was the proximate cause of the Plaintiff's injury. *Ienco v. City of Chi.*, 286 F.3d 994, 998 (7th Cir. 2002) (citing *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690–91 (7th Cir. 1997)). It is only when the inadequacy in training amounts to deliberate indifference to the rights of the individuals with whom the officers come into contact that a municipality may be held liable for the violation of an individual's constitutional rights on a failure to train theory. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Proof of deliberate indifference requires more than "[a] showing of simple or even heightened negligence." *Bd. of Cty. Comm'rs of Bryan Ct. v. Brown*, 520 U.S. 397, 407 (1997). A municipality acts with deliberate indifference in one of two ways: (1) when, "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights," that the deficiency amounts to deliberate indifference on the part of municipal policymakers, or (2), when a repeated pattern of constitutional violations makes "the need for further training . . . plainly obvious to the city policymakers." *Harris*, 489 U.S. at 390, n.10. "In limited circumstances, a local government's decision not to train certain employees about their legal

13

duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

A city cannot "be held liable on a failure to train theory or on a municipal policy theory absent a finding that the individual police officers are liable on the underlying substantive claim." *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 597 (7th Cir. 1997). The Supreme Court has "left open the possibility that, 'in a narrow range of circumstances,' a pattern of similar violations might not be necessary to show deliberate indifference." *See id.* at 63. Therefore, a plaintiff may be able to show that "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id.* However, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributable to a municipal policymaker." *Tapia v. City of Greenwood*, 965 F.2d 336, 338 (7th Cir. 1992) (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985)).

The Court has already determined that there are questions of fact as to whether a constitutional violation occurred. Thus the Court must now decide whether there was an express municipal policy or common practice or deliberate indifference that was the proximate cause of the Plaintiff's injury.

It is the Plaintiff's burden to come forward with evidence in support of his claim that the City of Fort Wayne failed to adequately train its police officers. However, the only evidence the Plaintiff has of record is, assuming the jury so finds, a single unconstitutional act. The Plaintiff also argues that the Defendants' assertions that no city policies were violated and that Defendant Hartman at all times acted in accordance with his training establishes that an unconstitutional

14

policy existed. However, that no city policies were violated does not establish that there was an existing unconstitutional policy pursuant to which Defendant Hartman acted. And, "merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible" is insufficient. *Harris*, 489 U.S. at 389. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* at 390–91. "[P]lainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *Id.* at 391. Therefore, the Court will grant summary judgment as to the Plaintiff's failure to train claim against the City of Fort Wayne.

### F. Punitive Damages

The Plaintiff initially requested that the Court assess punitive damages against Defendants Hartman, Griffin, and Palm. Punitive damages may be assessed only "when the defendant's conduct is shown to be motivated by evil intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Merritt v. De Los Santos*, 721 F.2d 598, 601 (7th Cir. 1983) (citing *Smith v. Wade*, 461 U.S. 30 (1983)). The Seventh Circuit "has required a showing of aggravating circumstances or malicious intent to justify the award of punitive damages." *Id.* (internal quotation omitted). The Defendants argued in their opening brief that the Plaintiff's claim for punitive damages was barred as a matter of law. The Plaintiff produced no evidence, nor even suggested, that Defendant Hartman was motivated by evil intent or that his actions were in reckless or callous indifference to the federally protected rights of

15

others. In fact, the Plaintiff has not responded to the Defendants' argument at all. Thus, the Court will grant summary judgment that the Plaintiff is not entitled to punitive damages.

**CONCLUSION**

For these reasons, the Court GRANTS IN PART and DENIES IN PART the Defendants' Motion [ECF No. 37]. The Court grants summary judgment as to the Plaintiff's claims for failure to train, the assessment of punitive damages, qualified immunity as to Defendant Griffin for unreasonable denial of medical care, and failure to intervene as to Defendants Griffin and Palm. The Court denies summary judgment as to Defendant Hartman's qualified immunity and use of excessive force. Because the Court has granted summary judgment in their favor, Defendants Griffin, Palm, and the City of Fort Wayne are DISMISSED from this case. A telephonic scheduling conference will be set by separate order.

SO ORDERED on February 2, 2018.

                                          s/ Theresa L. Springmann
                                         CHIEF JUDGE THERESA L. SPRINGMANN
                                         UNITED STATES DISTRICT COURT